**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SCOT ANTHONY PHILLIPS,

Petitioner,

v. Case No. 8:04-CV-2206-T-30TBM

WALTER A. MCNEIL[1],

Respondent.
_________________________________/

# ORDER

Petitioner, a State of Florida inmate proceeding *pro se*, petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 and challenges the validity of his conviction for second-degree murder (Dkt. #1). The Respondent contends that Petitioner's claims should be dismissed for either lack of subject matter jurisdiction or procedural default. Petitioner challenges his convictions on grounds of due process and trial court error.

Petitioner was convicted and sentenced to twenty-five years' imprisonment.[2] The state appellate court affirmed Petitioner's judgment and sentence (Dkt. #13, Ex. 7). Petitioner's subsequent motion for written opinion, clarification, rehearing, rehearing *en banc*, and/or certification (Dkt. #13, Ex. 9) was denied (Dkt. #13, Ex. 11). Petitioner

[1] Walter A. McNeil, Secretary of the Florida Department of Corrections, is substituted as the party respondent. Fed. R. Civ. P. 25(d).

[2] Petitioner's sentence contains a provision that after serving fifteen years imprisonment, the balance of the sentence shall be suspended and Petitioner placed on twenty years' probation (Dkt. #14, Ex. 16, Vol. I. P. 108).

thereafter filed a *pro se* "Notice of Intent to Invoke Discretionary Jurisdiction" (Dkt. #13, Ex. 13) in the Florida Supreme Court that was dismissed for lack of jurisdiction (Dkt. #13, Ex. 14). Petitioner did not pursue any other state post-conviction remedy (Dkt. #1, p. 2). Petitioner's Section 2254 petition followed.

**Standard of Review**

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the

> state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

Petitioner has the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). Petitioner's petition is subject to the provisions of the AEDPA because his conviction was entered after the AEDPA was enacted. Consequently, a presumption of correctness attaches to the finding of fact in the trial court's rejection (Dkt. #13, Ex. 7) of Petitioner's claims.

**Background**[3]

Petitioner and his roommate, Timothy Livermore ("Livermore"), went to the home of Angelique Baker ("Baker"). Shortly thereafter, Angela Sheats ("Sheats"), who was Baker's roommate, arrived at the house with the victim's brother, Christopher Ball ("Ball"). Ball and Petitioner had a verbal altercation. Petitioner told Ball to leave. Ball retrieved a tire iron from his vehicle and said to Petitioner, "I'll wrap this around your head, skinny boy." Ball got in his vehicle and threatened to return to the house with his brothers to "kick ass." Ball left the premises. Livermore had informed Petitioner that Ball's brother, Bobby Gene Ball (the "victim"), "had a short temper." Petitioner went to his truck and retrieved a knife, placed it in his back pocket and went back inside the house. After Ball left, Baker's estranged husband, Larry Baker, arrived at the house. Shortly thereafter, Ball made multiple phone calls to Baker's house, threatening to bring his brothers back to the house to "kick ass" and "shoot up the place." Larry Baker spoke to Ball on the phone and calmed Ball down. The phone calls from Ball stopped and Larry Baker left the house. Despite these threats, Petitioner remained at the house because Angelique and Larry Baker felt Ball was just "making idle threats."

Around 11:30 p.m., the victim arrived at Baker's house. Petitioner had heard Baker say that the victim had slapped her the day before and that she had a restraining order against the victim. The victim began banging on the front door, demanding Baker come outside and speak with him. Baker opened the door and the victim pulled her out of the house. The

---

[3] This summary of the facts derives from Petitioner's brief on direct appeal (Dkt. #13, Ex. I).

victim was angry and cursing at Baker. Petitioner walked outside and asked the victim to leave Baker alone and to leave the premises. Petitioner and the victim began arguing. Baker called 911. The victim learned the police were on their way and the victim began walking back to his car. The victim accused Petitioner of scratching the victim's car. The victim came around his car and jumped on Petitioner and a fight began. Livermore and Baker broke up the fight, after which it was discovered the victim had been stabbed, and Petitioner had cut several of his own fingers. Petitioner then kicked the victim and dragged him. Petitioner left the scene. The victim died from his wounds.

**Ground One**

Petitioner alleges the trial court erred by failing to acquit him after the State failed to produce sufficient evidence to sustain his conviction for second-degree murder. Petitioner contends that the State failed to prove that he acted with ill will, hatred, spite, or an evil intent as required to establish the offense of second degree murder. Petitioner further alleges that the State failed to adduce evidence showing that Petitioner did not act in self-defense. Respondent argues that ground one is both unexhausted and procedurally barred.

Florida courts evaluate a sufficiency of the evidence claim under a legal standard identical to the standard used by federal courts in deciding federal due process challenges to the sufficiency of the evidence. In evaluating such a claim, Florida courts assess whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt. *Simmons v. State*, 934 So.2d 1100, 1111 (Fla. 2006); *Lynch v. State*, 293 So.2d 44 (Fla.

1974). This standard is the same as the federal standard for evaluating a due process challenge based on the sufficiency of the evidence as announced in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ( "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original).

A prisoner fails to exhaust federal claims merely by raising similar claims in state court. *Picard v. Connor*, 404 U.S. 270, 277 (1971). A petitioner must present his claim to the state court so that the state court has the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d at 1344 (*quoting Picard v. Connor*, 404 U.S. at 277). In the instant case, Petitioner's state and federal sufficiency of the evidence claims were the same. The state court analyzed petitioner's due process sufficiency of the evidence claim under a standard identical to the federal standard for evaluating such claims. Consequently, the claim will be treated as exhausted and not procedurally barred.

The merits of ground one fail to satisfy the AEDPA's requirements. There is no Supreme Court precedent deciding the specific circumstances under which a state trial court may deny a motion for judgment of acquittal where a defendant claims he was justified in his use of deadly force. *Bucklon v. Crosby*, 2006 WL 2990449 (M.D. Fla. 2006). Consequently, the state court's ruling cannot be contrary to clearly established federal law because the state court could not have applied a rule of law contradicting clearly established Supreme Court precedent, nor arrived at a conclusion opposite that of the Supreme Court in

a case with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. at 412-13; *Bucklon v. Crosby*, 2006 WL 2990449 at *5.

To prove the crime of second-degree murder, the State must prove three elements beyond a reasonable doubt: (1) the victim is dead; (2) the death was caused by the criminal act of the defendant; and (3) there was an unlawful killing of the victim by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life. Fla. Std. Jury Inst. 7.4.[4] Florida law provides that a ". . . person is justified in the use of deadly force only if he or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony." Fla. Stat. § 776.012.

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970). In a challenge to a state criminal

---

[4] The standard jury instruction provides the following definitions:

> An "act" includes a series of related actions arising from and performed pursuant to a single design or purpose.
>
> An act is "imminently dangerous to another and demonstrating a depraved mind" if it is an act or series of acts that:
>
> > 1. a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and
> >
> > 2. is done from ill will, hatred, spite or an evil intent, and
> >
> > 3. is of such a nature that the act itself indicates an indifference to human life.
>
> In order to convict of second degree murder, it is not necessary for the State to prove the defendant had an intent to cause death.

Fla. Std. Jury Inst. 7.4.

conviction brought pursuant to Section 2254, a petitioner is entitled to habeas relief on a claim of insufficient evidence "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. at 318-19 (*quoting Woodby v. INS*, 385 U.S. 276, 282 (1966) (emphasis in original)).

Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law. *Jackson v. Virginia*, 443 U.S. at n. 16. "Although each element of the offense must be established beyond a reasonable doubt, *see Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990) (*citing Jackson [v. Virginia]*, 443 U.S. at 316) the State is not required to rule out every hypothesis except that of the guilt of the defendant, *see Jackson [v. Virginia]*, 443 U.S. at 326)." *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). If the record contains facts supporting conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the State and against the defendant. *Johnson v. Alabama*, 256 F.3d at 1172. In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and weighing the evidence. *Johnson v. Alabama*, 256 F.3d at 1172 (*citing Jackson v. Virginia*, 443 U.S. at 326).

At trial, Baker testified that she heard the victim pulling up to her house in his car (Dkt. #16, Vol. III, p. 243) and called 911. The victim knocked on the door and "screamed

at [Baker] to open the door" (Dkt. #16, Vol. III, p. 245). Baker complied and the victim "grabbed [her], pulled [her] outside and pushed [her] against the wall" (Dkt. #16, Vol. III, pp. 245-46). The victim was angry and using profanity. Petitioner followed Baker and the victim outside. Petitioner asked the victim to take his hands off Baker, told the victim that the police were coming and that the victim needed to leave (Dkt. #16, Vol. III, p. 247). The victim and Petitioner were screaming at each other and the victim accused Petitioner of "keying" the victim's car.[5] The victim then "ran from around the side of his car and around back on [Baker's] driveway and jumped on [Petitioner] and they started fighting" (Dkt. #16, Vol. III, p. 251). Baker and Livermore pulled the victim and Petitioner apart, and discovered that the victim had been stabbed (Dkt. #16, Vol. III, p. 256). Petitioner pulled the victim's legs out from underneath the victim and pulled him to the ground. Petitioner got in his vehicle and left the scene.

Detective Luis Adan ("Adan") of the Tampa Police Department testified that Petitioner admitted that he felt the need to arm himself because Petitioner "had had his ass kicked numerous times in the past and he wasn't going to allow it to happen again" (Dkt. #16, Vol. V, p. 523). Petitioner also admitted during questioning that a knife recovered from his home by police was the knife he used to stab the victim ((Dkt. #16, Vol. V, p. 523).

After the State rested its case, defense counsel moved for a judgment of acquittal, asserting that the State failed to establish a prima facie case of second-degree murder and

---

[5] Sheats testified that she saw Petitioner standing on the carport with a knife in his hand (Dkt. #16, Vol. IV, p. 381).

that the State failed to overcome its burden of proving that Petitioner did not act in self-defense (Dkt. #16, Vol. VI, pp.577-82). The motion was denied (Dkt. #16, Vol. VI, p. 584). Thereafter the defense presented several witnesses and Petitioner testified.[6]

Petitioner testified that he retrieved the knife from his truck after Ball left because he felt threatened. He further testified that he heard Sheats say that Ball was going to return to the house with the victim to "kick our ass and shoot up the place" (Dkt. #16, Vol. V, p. VI, 628). The victim arrived at the house approximately 1-1.5 hours after the calls from Ball ended. During the altercation, the victim attacked Petitioner, hitting him and choking him almost to unconsciousness. As he was about to lose consciousness, Petitioner took out the knife and stabbed the victim. Petitioner later learned the victim had died.

Viewing the State's evidence of petitioner's guilt in the light most favorable to the State, it is objectively reasonable to conclude that a rational trier of fact could find Petitioner committed second-degree murder, the crime for which he stands convicted. The state appellate court's silent affirmance[7] of Petitioner's conviction was neither an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts.

---

[6] The jury was instructed on second-degree murder, manslaughter, and justifiable use of deadly force (Dkt. #11, Ex. 6, pp. 64-69).

[7] The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).

**Ground Two**

Petitioner alleges that trial court should have declared a mistrial due to the prosecutors' improper closing arguments. Petitioner claims the State presented "[o]pinions, statements and presentations . . . that were nothing than [sic] inflammatory, improper and extremely prejudicial in nature" (Dkt. #1, p. 5). Petitioner further claims that the State presented issues not in evidence, thereby violating his right to due process.[8]

In Florida, "wide latitude is permitted in arguing to a jury." *Breedlove v. State*, 413 So.2d 1, 8 (Fla. 1982). Improper prosecutorial remarks amount to a constitutional violation only if the remarks render the proceedings fundamentally unfair. *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997). The relevant inquiry is whether the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (*quoting Donnelly v. DeChristoforo*, 416 U.S. at 642). In making this assessment, a reviewing court must evaluate the allegedly improper comments in the context of both the prosecutor's entire

[8] Respondent asserts this ground is exhausted to the extent Petitioner raised a federal due process claim at trial and on direct appeal (Dkt. #17, p. 22). To the extent Petitioner relies upon state law, the claim is not cognizable in a federal habeas action. *See* 28 U.S.C. § 2254 (a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

closing argument and the trial as a whole.[9] *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980).[10]

Petitioner fails to specify which portions of the State's closing arguments he relies upon to support this claim. A review of the record shows that defense counsel objected during the State's closing argument and its rebuttal argument. In its initial closing argument, the State asked the courtroom bailiff to open the knife for demonstration purposes (Dkt. #16, Vol. VII, p. 728). Defense counsel objected and argued that the prosecutor was "attempting to create additional evidence with respect to whatever point she is trying to make" (Dkt. #16, Vol. VII, p. 728). Defense counsel moved for a mistrial and the motion was denied (Dkt. #16, Vol. VII, pp. 728-29). In its rebuttal argument, the State argued as follows:

> This defendant talked to the detectives over and over and over again. Did he ever mention one time that the reason he stabbed Bobby Ball was because he was being choked to death?
>
> How long - - can you imagine all the questions the detectives are asking him? Never said, never said, "The reason I stabbed him was because he was choking me." How could you not include that if it's true? How would you forget that vital piece of information?
>
> He had some other things to say to the detectives. He had a lot of other things to say about the shiny object that Bobby Ball had in his hand and how Bobby cut him with that shiny object. And he [sic] how he was able to take that shiny object from Bobby Ball and cut his hand in the process.

---

[9] Federal law on closing argument is the same as Florida law. To determine whether a prosecutor's remarks are harmful, "the comments must be analyzed within the context of the closing argument as a whole and considered cumulatively within the context of the entire record." *Rivera v. State*, 840 So.2d 284, 287 (Fla. 5th DCA 2003) (*citing Brooks v. State*, 762 So.2d 879 (Fla. 2000); *Cochran v. State*, 711 So.2d 1159 (Fla. 4th DCA 1998)).

[10] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

> And how he, once he got the shiny object from Bobby Ball, how he stabbed him with it. You remember all of those things, yet you don't remember this guy had me in a headlock. He was choking me. I couldn't breathe. I thought I was going to die. And so I pulled out the knife from my back pocket and stabbed him.
>
> There's no way in the world he would not have said that to the detectives. He never said that. When you get back there to deliberate you think about that. How in the world - - what would explain his not saying that?
>
> The defense attorney says an eighth grade education. A sixth grader would have blurted that out. This defendant should have said this as he is walking, as this defendant was walking into the police station - -

(Dkt. #16, Vol. VII, pp. 780-82). Defense counsel objected, arguing that the prosecutor was asking or suggesting that the jury convict Petitioner because he lied to the police. The prosecutor further argued:

> Finally, finally, after [Petitioner] realized the detectives have located the knife that [Petitioner] had hidden, finally, he says, "Well, I lied. The knife was mine. I brought the knife to the fight. Yeah." And then he goes on to tell the detective about how he stabbed Bobby Ball.
>
> He says that Bobby Ball had - - "My back was against the wall and we were crouched down and Bobby Ball was punching me in the abdomen or my gut. I reach in my back pocket, grabbed the knife and stabbed him. I wasn't going to get my butt kicked as I got it kicked in the past." That's what he said. That's his story.
>
> The problem with that story is that that story doesn't equal self-defense. That story doesn't equal justifiable use of deadly force. He has since obtained an attorney.

(Dkt. #16, Vol. VII, pp. 785-86). Defense counsel objected on the ground that the prosecutor's comment "would have a chilling effect on a defendant's right to obtain an effective assistance of counsel if the [p]rosecution could infer there is something wrong with

it. It's highly improper and move for a mistrial" (Dkt. #16, Vol. VII, p. 786). The motion was denied and the trial court instructed the jury to disregard the comment. The trial court advised the jury at the beginning of closing arguments that what the attorneys said was not evidence. The court also instructed the jury that they were to look only to the evidence introduced at trial to determine their verdict (Dkt. #16, Vol. VII, p. 804)

Taken in the context of the entire trial, the prosecutors' comments, even if improper, were not so egregious as to render the trial fundamentally unfair, nor did they infect the trial with such unfairness that the resulting conviction amounts to a denial of due process. *See Tucker v. Kemp,* 802 F.2d 1293, 1296 (11th Cir. 1986) (*en banc*), *cert. denied*, 480 U.S. 911 (1987) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."). Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts.

**Ground Three**

Petitioner alleges that the trial court's jury instructions were erroneous. Specifically, Petitioner contends that the trial court erred by refusing to instruct the jury on felony battery, refusing to give a special instruction requested by the defense, and by giving a prejudicial and "totally erroneous" instruction on the consideration of the victim's reputation.

Petitioner presented this claim on direct appeal based on state law grounds only and failed to allege the violation of a federal constitutional right. Before a federal court may

grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. at 842. *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003).

A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d at 1358-59 (*quoting O'Sullivan v. Boerckel*, 526 U.S. at 845). To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'")

(*quoting Duncan v. Henry*, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 at 1344.

Petitioner failed to present the federal component of ground three to the state court on direct appeal. Consequently, he deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. at 845. A federal court cannot grant a Section 2254 petition unless the petitioner has exhausted every available state court remedy. *Snowden v. Singletary*, 135 F.3d at 735. Petitioner's exclusively state law arguments presented on direct appeal leave the exhaustion requirement unsatisfied. *Duncan v. Henry*, 513 U.S. at 365. *See also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). Ground three remains unexhausted and, therefore, eludes federal review.[11]

[11] In his reply (Dkt. #18, p. 1), Petitioner agrees with the Respondent that he is not entitled to relief "based on lack of subject matter jurisdiction, petitioner's defaults, or his failure to satisfy 28 U.S.C. § 2254(d), (e)."

Neither can Petitioner return to state court to present his federal claim.[12] Because he could have raised and preserved a federal constitutional claim on direct appeal, Petitioner was precluded from doing so collaterally in a Rule 3.850 motion. *See e.g.*, *Childers v. State*, 782 So.2d 946, 947 (Fla. 4th DCA 2001) ("The law is clear that where an issue could have been raised on direct appeal, it is not the proper subject for a Rule 3.850 motion.") (citations omitted). The state procedural rules also preclude a second direct appeal.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). *See also* *Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152

[12] At the time Petitioner filed his reply to his federal habeas petition, the two-year limitation period for filing a state post-conviction relief motion had not expired. *See Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.) (applying two-year limitation of Fla. R. Crim. P. 3.850), *cert. denied*, 498 U.S. 834 (1990). Petitioner fails to demonstrate that he subsequently exhausted his claim in state court. Consequently, this claim remains unexhausted.

(1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson v. Campbell*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. at 495-96; *Henderson v. Campbell*, 353 F.3d at 892. "A 'fundamental miscarriage of justice' occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner fails to demonstrate cause and prejudice excusing his default. Petitioner has neither alleged nor shown that the fundamental miscarriage of justice exception applies. Because Petitioner fails to proffer specific facts showing an exception to procedural default, Hill v. Jones, 81 F.3d 1015 (11th Cir. 1996), ground three is procedurally barred from federal review.[13]

---

[13] To the extent these claims might allege a federal due process violation, no relief is warranted. The limitation on federal habeas review to claims of federal constitutional error applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976).

Even if this claim were not procedurally barred, Petitioner would not be entitled to relief. Issues of jury instructions are matters of state law and are not cognizable on federal habeas corpus review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. at 67 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

It is therefore ORDERED AND ADJUDGED that:

1. Petitioner's petition for the writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is to enter judgment for Respondent and close this case.

**DONE** and **ORDERED** in Tampa, Florida on February 12, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record